SATTERWHITE v. YOUNG.

4-9888                                         252 S. W. 2d 626

Opinion delivered November 24, 1952.

*A. A. Thomason*, for appellant.

*Tompkins, McKenzie & McRae*, for appellee.

Griffin Smith, Chief Justice. B. W. Pace and his brother, J. M. Pace, and their sister, Mollie, lived on 240 acres owned by B. W. Neither was married and their home life appears to have been marked by conventional tranquillity quite in keeping with their rural surroundings and self-sufficiency. The land had been owned by B. W. since 1895 and the three occupied the same house until Mollie died in 1939 and B. W. died in 1942.

In 1937 B. W. executed a deed to the land, naming J. M. and Mollie as grantees, a condition being that the instrument was not to take effect ". . . until the death of the said B. W. Pace." The acknowledgment was before a justice of the peace who died several years before the instant suit was brought.

Two brothers surviving B. W. were Manse and Alex. Six brothers and sisters had predeceased B. W., some of whom left issue. The claims of these survivors to various estate interests forms the subject-matter of the adverse decree resulting in this appeal.

In September, 1947, J. M. conveyed to H. P. Young, his nephew. Young undertook to acquire the interests of certain heirs. The collateral kinsmen of B. W. and Mollie Pace then conferred and concluded to attack the deed executed by B. W. to J. M. and Mollie, alleging, (a) that B. W. Pace lived under the supervision of J. M.; (b) that the three Paces—B. W., J. M., and Mollie—gained their subsistence from the land; (c) that no consideration was paid for the deed, and (d) that B. W., "if not actually mentally incompetent, was of such inferior mentality that he was not able to comprehend the effect of business transactions."

It is also argued that a fiduciary relationship existed between B. W. and J. M., and that the latter must be held to a high degree of accountability in dealing with the property of his brother.

The chancellor found that when the deed was delivered B. W. was in full possession of his mental faculties, that it was given for value and conveyed the property in question.

Appellants emphasize the rule that gifts will be scrutinized with the most jealous care when made in favor of a party who occupies a confidential relationship—a relationship which makes it the duty of the person benefited by the bounty to guard and protect the interests of the donor; and further, it is the duty of such beneficiary to give such advise as would promote the purposes of the giver. As Mr. Justice BUTLER said for the court in *Young* v. *Barde,* 194 Ark. 416, 108 S. W. 2d 495, ". . . this duty is not confined to cases where there is a legal control. [Such duties] are supposed to arise wherever there is a relationship of dependence or confidence—especially that most unquestioning of all confidences which springs from affection on the one side and a trust in a reciprocal affection on the other."

The competency of B. W. Pace to deal with his material affairs was questioned in 1926 when Alex Pace and others petitioned the probate court of Columbia county for an adjudication of incompetency. The evidence was submitted to a jury and a verdict finding that B. W. was of sound mind "and competent to attend to his own business" was returned. This adjudication is in sharp contradiction of testimony given by witnesses for appellants in the case at bar. Many of them thought that B. W.'s mentality was that of a ten- or twelve- year-old child.

In 1938 B. W. sold timber to J. E. Speer Lumber Company for $1,000, and in 1938 he executed an oil and gas lease to Hunt Oil Company for $1,200. In March, 1940, B. W. was adjudged insane and a guardian was appointed. He was then 80 years of age.

Some of the appellants, or witnesses by whom they undertook to establish B. W.'s incompetency, testified that they did not observe any change in the subject's condition between 1924 and 1937 or '38. It was shown that B. W. maintained an account with Peoples Bank of Waldo, but checks were signed, "B. W. Pace, by J. M. Pace." Testimony as abstracted indicates that at the time of his death B. W. had approximately $2,000.

J. H. Williams, who handled the timber transaction for the Speer Company, testified that he talked the matter over with B. W. Pace; J. M. was around somewhere on the premises, but did not have any direct connection with the timber sale. The first offer was $800. This was refused by B. W., as was an offer of $900. During these negotiations (resulting in an agreement to pay $1,000) there was nothing in B. W.'s actions to indicate that he did not thoroughly understand what was being done; in fact, he succeeded in getting $200 more than was first offered.

Although the testimony is in acuminated conflict and appellants do not rely wholly upon observations and beliefs of interested persons,—and this is equally true of appellees— we cannot say that the Chancellor's findings are not supported under the equity rule.

Affirmed.

Mr. Justice McFADDIN not participating.